STATE OF NORTH CAROLINA v. MARY ELIZABETH JAMES, LIONEL JAMES AND MICHAEL M. RODDEY

No. 8526SC1197

(Filed 3 June 1986)

**1. Narcotics § 4— cocaine—intent to sell or deliver—evidence sufficient**

There was sufficient evidence of possession of cocaine with intent to sell or deliver as to defendant Lionel James where a small quantity of cocaine was packaged in multiple envelopes of the type commonly used in the sale of drugs; there was evidence of a large number of syringes in the house where the cocaine was found, as well as a large number of bags of heroin under the porch; there was evidence that defendant Lionel James had brought cocaine with him to the house, taken it away, and returned with it several hours later; Lionel was frequently at the house; and Lionel did not object to evidence that the area was frequented by drug dealers.

**2. Narcotics § 4.3— heroin—found under porch—evidence of possession sufficient**

In a prosecution for possession of heroin with intent to sell or deliver where the heroin was found under a porch board, there was ample evidence of defendant Lionel's activity in and frequent presence at the house where his clothes and pay stub were found to establish his access to the heroin; the evidence of cocaine possession on the same premises was part of the incriminating evidence necessary to show guilty knowledge and belie defendant's asserted ignorance of drug dealing; and the manner in which the heroin was packaged made it clear that intent to sell would be established once possession was established.

**3. Narcotics § 4.4— cocaine—constructive possession—evidence insufficient**

The evidence was insufficient to convict defendant Roddey of possession with intent to sell and deliver cocaine or of acting in concert where the evidence linking Roddey to the cocaine was that he was found in the kitchen where a refrigerator containing the drugs was located; he had a gun in his hand and was "sneaking around"; he had been at the house the day before; and there was no evidence that he lived there, only that he had visited on the two days in question.

APPEAL by defendants Lionel James and Michael M. Roddey from *Sitton, Judge.* Judgments entered 7 June 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 11 March 1986.

Defendants Mary Elizabeth James, Lionel James and Michael Roddey were charged with two counts each of possession with intent to sell the same controlled substances, *i.e.*, cocaine and heroin. They were tried together.

The State's evidence tended to show the following: Police prepared to raid defendant Mary Elizabeth James' ("Mary's") house which was located in an area frequented by drug dealers. Police had seen Mary's brother, defendant Lionel James ("Lionel"), and defendant Michael Roddey ("Roddey") at Mary's house the preceding day. As the officers approached the house, Lionel was on the front porch. They took him into custody and entered the house. Roddey was in the kitchen; police observed him "sneaking around" with a gun in his hand. Roddey laid the pistol down when police entered. A search of the house disclosed cocaine in the refrigerator in the kitchen, and a bottle containing packets of heroin hidden beneath a board under the front porch. Lionel's clothing and an envelope containing a pay stub belonging to him were found in a bedroom on a mattress on the floor, but Lionel denied living at the house. The three defendants were arrested and each charged separately with possession of the two quantities of drugs.

Mary testified that she had nothing to do with drugs; that she rented the house and lived there, and that Lionel had brought the cocaine over. She testified that earlier she had asked him to remove it. She denied any knowledge of the heroin, and testified that drug dealers who frequented the neighborhood often threw things into her yard.

Lionel testified, and admitted that the cocaine was his but that he intended to use it himself. He confirmed that Mary asked him to take the cocaine away but testified that he brought it back later when she was working. Lionel denied knowledge of the heroin. He denied that the clothes at the house were his, but admitted that he occasionally stayed at his sister's house to babysit.

Roddey testified, denying any connection to the house or the drugs. He was only a casual visitor. He had found the gun, which was inoperable, lying in the yard and was simply looking for a place to put it when the police arrived.

The trial court allowed Roddey's motion to dismiss the charge of possession of the heroin found under the porch. As to all other charges, the defendants were found guilty. Roddey received a sentence in excess of the presumptive. Mary and Lionel each received two consecutive presumptive sentences, the second

being suspended on conditions of probation. All three appealed; Mary has since withdrawn her appeal.

*Attorney General Thornburg, by Assistant Attorney General Douglas A. Johnston, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Marc D. Towler, for defendant-appellant Michael M. Roddey.*

*Keith M. Stroud for defendant-appellant Lionel James.*

EAGLES, Judge.

The appeals involve common questions of the sufficiency of the evidence of constructive possession of controlled substances. The doctrine of constructive possession applies when a person without *actual* physical possession of a controlled substance has the *intent and capability* to maintain control and dominion over it. *State v. Williams*, 307 N.C. 452, 298 S.E. 2d 372 (1983). As the terms "intent" and "capability" suggest, constructive possession depends on the totality of circumstances in each case. No single factor controls, but ordinarily the question will be for the jury. *See State v. Baize*, 71 N.C. App. 521, 323 S.E. 2d 36 (1984) (collecting cases), *disc. rev. denied*, 313 N.C. 174, 326 S.E. 2d 34 (1985). *See also State v. Beaver*, 77 N.C. App. 734, 336 S.E. 2d 112 (1985). In *Baize*, we identified three typical situations regarding the premises where drugs were found: (1) some exclusive possessory interest in the defendant and evidence of defendant's presence there; (2) sole or joint physical custody of the premises of which defendant is not an owner; and (3) in an area frequented by defendant, usually near defendant's property. *Id.* at 529, 323 S.E. 2d at 41. The fact that a person is present in a room where drugs are located, nothing else appearing, does not mean that person has constructive possession of the drugs. *Id.* If possession of the premises is non-exclusive, there must be evidence of other incriminating circumstances to support constructive possession. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984).

As in other cases, where the sufficiency of the evidence of possession is challenged, we consider the evidence in the light most favorable to the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clar-

ifies the State's case. *See generally State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982).

### DEFENDANT LIONEL JAMES' APPEAL

[1]  Lionel assigns error only to denial of his motions to dismiss for insufficiency of the evidence of possession of the controlled substances with intent to sell or deliver. As to the cocaine, Lionel admitted that it was his. The only question is whether there was sufficient evidence of his intent to distribute it. That intent may be established by circumstantial evidence. *State v. Casey*, 59 N.C. App. 99, 296 S.E. 2d 473 (1982). Even where the amount of drugs involved is small, the surrounding circumstances may allow the jury to find an intent to distribute. *State v. Williams*, 71 N.C. App. 136, 321 S.E. 2d 561 (1984) (less than one ounce of marijuana packaged in numerous small bags). *But see State v. Wiggins*, 33 N.C. App. 291, 235 S.E. 2d 265 (7 ounces of marijuana, no other evidence of intent to distribute; insufficient), *cert. denied*, 293 N.C. 592, 241 S.E. 2d 513 (1977).

Here there was evidence that the cocaine, although of small quantity, was packaged in multiple envelopes of a type commonly used in the sale of drugs. There was evidence of a large number of syringes in the house, as well as a large number of bags of heroin under the porch. There was evidence that Lionel had brought the cocaine with him to the house, taken it away, and returned with it several hours later, despite the small amount and his admission that he used cocaine. Lionel frequently was at the house. There was evidence that the area where the house is located was frequented by drug dealers. While this last evidence was perhaps not technically competent, *State v. Weldon*, 314 N.C. 401, 333 S.E. 2d 701 (1985), it was admitted without objection and was properly before the jury. *State v. Coffey*, 289 N.C. 431, 222 S.E. 2d 217 (1976) (evidence admitted without objection may be considered for whatever value it may have). These factors, considered together, sufficiently raise a jury question as to Lionel's intent to distribute the cocaine as part of drug-related activities at the house.

[2]  As to the heroin, the question turns on whether the State presented sufficient evidence of Lionel's joint custody or routine access to the house to support an inference that he had control over the drugs located under the porch. The manner in which the

heroin was packaged, in a large number of small envelopes, together with the other circumstances described above, make it clear that once possession was established, intent to sell would be established as well. Lionel admitted to police officers that his clothes were on a mattress in one room of the house, where the officers also found a pay stub bearing his name. The house was rented by Lionel's sister, Mary. He admitted staying over at the house occasionally to babysit for Mary's child. Lionel had been seen there the day before, and was standing on the porch nearest the heroin when police arrived. He admitted keeping the cocaine at the house though without his sister's permission. We think these circumstances sufficed to show sufficient joint custody and access to the premises and other incriminating circumstances to allow the jury to consider Lionel's constructive possession of the heroin.

We rely on *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972). There the Supreme Court affirmed a conviction based on constructive possession where marijuana was found in a shed close to defendant's house, defendant was frequently seen around the shed, *and* there were marijuana seeds inside the house. The seeds in the house were important, as they served to establish guilty knowledge, without which mere access cannot ordinarily constitute possession. *State v. Brown, supra.* Here there was ample evidence of Lionel's activity in and frequent presence at the house where his clothes and pay stub were found, sufficient to establish his access to the heroin. The evidence of cocaine possession on the same premises was part of the incriminating evidence necessary to show guilty knowledge and belie his asserted ignorance of drug dealing. *See also State v. Summers*, 15 N.C. App. 282, 189 S.E. 2d 807 (drugs found in fenced yard outside house shared by defendant; sufficient evidence of possession), *cert. denied*, 281 N.C. 762, 191 S.E. 2d 359 (1972).

We conclude that the State presented sufficient evidence to go to the jury on all charges against Lionel. The court correctly denied his motions. The defense theory, that some unknown drug dealer(s) used the porch as a hiding place unknown to the occupants of the house, was for the jury, not the court, to consider. *See State v. Hamilton*, 77 N.C. App. 506, 335 S.E. 2d 506 (1985), *disc. rev. denied*, 315 N.C. 593, 341 S.E. 2d 33 (1986).

Lionel also attempts to argue that certain jury instructions were improperly given. No objection was made at trial, and the question is not before us. App. R. 10(b)(2). We find no "plain error" in the instructions, or other reversible error on the face of the record.

### DEFENDANT MICHAEL RODDEY'S APPEAL

[3]  Roddey was convicted only of possession with intent to sell and deliver the cocaine. He also made a motion to dismiss for insufficiency of the evidence. The evidence linking Roddey to the cocaine was that he was found in the kitchen where the refrigerator containing the drugs was located. He had a gun in his hand and was "sneaking around." Roddey had been at the house the day before. There was no evidence that he lived there, only that he had visited on the two days in question. The gun was not introduced into evidence, nor was there any evidence that it was loaded or usable or that Roddey committed any crime simply by possessing it. Roddey took no action to defend the house but when accosted by law enforcement officers, surrendered after putting the gun down. All the evidence suggests that Roddey was looking for a place to hide the gun. There was no evidence, other than Roddey's presence, linking him to Lionel (the admitted owner of the cocaine) or Mary or any current drug dealings, except his admission he had known Mary for several years.

As we have noted earlier, mere presence in a room where drugs are located does not itself support an inference of constructive possession. *State v. Baize, supra. See also State v. Weems*, 31 N.C. App. 569, 230 S.E. 2d 193 (1976) (defendant passenger in car where drugs found, no evidence connecting him to drugs, insufficient); *State v. Balsom*, 17 N.C. App. 655, 195 S.E. 2d 125 (1973) (no evidence visitors knew of drugs, insufficient; upholding conviction of tenant). The only incriminating circumstance going beyond Roddey's presence was the fact that he had a gun in hand and was "sneaking around" when police raided the house. We think this single circumstance was insufficient to establish constructive possession of the cocaine. *See State v. Baize, supra* (no constructive possession even though in same room with drugs and conspiracy with actual possessor established).

The court also instructed on acting in concert, and the jury may have found Roddey guilty on this theory. We think the evi-

dence was insufficient for the charge to be considered by the jury on an acting in concert theory as well. We note that the acting in concert theory has not been frequently applied to possession offenses, as it tends to become confused with other theories of guilt. *See State v. Baize, supra.* The only connection between Roddey and the possessor(s) of the cocaine was Roddey's presence and the gun. There was no evidence of joint action other than presence at the scene. *Compare State v. Lovelace,* 272 N.C. 496, 158 S.E. 2d 624 (1968) (possession of burglary tools on acting in concert theory) (both defendants observed together working at door found disturbed by tool marks). Mere presence at the scene of a crime is not itself a crime, absent at least some sharing of criminal intent. *See State v. Ham,* 238 N.C. 94, 76 S.E. 2d 346 (1953). This record raises no more than a suspicion that Roddey was intentionally involved in possession of the cocaine.

We therefore hold that defendant Roddey's motion to dismiss should have been allowed. Since we reach this result, we need not reach his remaining assignments of error.

CONCLUSION

The State presented sufficient evidence to go to the jury on all charges against defendant Lionel James. The State did not present sufficient evidence of defendant Michael Roddey's guilt, however, and his conviction must be reversed.

As to defendant Lionel James—no error.

As to defendant Michael Roddey—reversed.

Judges WEBB and PARKER concur.